BADE, Plaintiff and Respondent, v. BADGER MUTUAL INSURANCE COMPANY, Defendant and Appellant: JONES, Defendant.

*April 13—May 10, 1966.*

40

42

For the appellant there were briefs by *Hoffman, Cannon, McLaughlin & Herbon,* attorneys, and *Louis W. Staudenmaier, Jr.,* of counsel, all of Milwaukee, and oral argument by *Mr. Staudenmaier.*

For the respondent there was a brief by *Phillips, Hoffman & Phillips* of Milwaukee, and oral argument by *N. Paley Phillips.*

BEILFUSS, J. On this motion for summary judgment the *material* facts are not in dispute nor are the reasonable inferences to be drawn therefrom doubtful.

In *McWhorter v. Employers Mut. Casualty Co.* (1965), 28 Wis. (2d) 275, 277, 278, 137 N. W. (2d) 49, the court stated:

"The rules governing summary judgments are well known and have been frequently stated and explained by this court. Under the rule of *Hyland Hall & Co. v. Madison Gas & Electric Co.* (1960), 11 Wis. (2d) 238, 105 N. W. (2d) 305, and *Dottai v. Altenbach* (1963), 19 Wis. (2d) 373, 120 N. W. (2d) 41, we first examined the moving papers and documents to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 270.635 (2), Stats., and if he has, we then examine the opposing party's affidavits and other proof to determine whether facts are shown which the court deems sufficient to entitle the opposing party to a trial. If the material facts are not in dispute and if the inferences which may reasonably be drawn from the facts are not doubtful and lead only to one conclusion, then only a matter of law is presented which should be decided upon the motion. *Voysey v. Labisky* (1960), 10 Wis. (2d) 274, 103 N. W. (2d) 9; *Rabinovitz v. Travelers*

*Ins. Co.* (1960), 11 Wis. (2d) 545, 105 N. W. (2d) 807; *Bond v. Harrel* (1961), 13 Wis. (2d) 369, 108 N. W. (2d) 552."

The legal issues are: (1) Were the misrepresentations sufficient as a matter of law to permit Badger to void the policy, and (2) do the doctrines of waiver, estoppel or laches prevent Badger from asserting the invalidity of the policy?

Sec. 209.06 (1), Stats., provides:

"No oral or written statement, representation or warranty made by the insured or in his behalf in the negotiation of a contract of insurance shall be deemed material or defeat or avoid the policy, unless such statement, representation or warranty was false and made with intent to deceive, or unless the matter misrepresented or made a warranty increased the risk or contributed to the loss."

In our consideration of this statute in *Stockinger v. Central National Ins. Co.* (1964), 24 Wis. (2d) 245, 253, 128 N. W. (2d) 433, we stated:

"Under this statute, there are three grounds for avoiding a policy: (1) If the statement was false and made with intent to deceive; (2) if the statement increased the risk; or (3) if the statement contributed to the loss. *Polar Mfg. Co. v. Integrity Mut. Ins. Co.* (1959), 7 Wis. (2d) 443, 447, 96 N. W. (2d) 822. If the misrepresentation increases the risk, or if it contributes to the loss, that is sufficient to defeat recovery even if there is no actual intent to deceive. *Olson v. Herman Farmers Mut. Ins. Co.* (1925), 187 Wis. 15, 18, 203 N. W. 743; *Polar Mfg. Co. v. Integrity Mut. Ins. Co.*, supra, page 446."

The initial question to be decided is whether the false statements made by William Wesley Jones are material to the risk assumed by Badger. The court in *Haas v. Integrity Mut. Ins. Co.* (1958), 4 Wis. (2d) 198, 203, 90 N. W. (2d) 146, stated:

"A similar question was decided by the United States court of appeals in *Allstate Ins. Co. v. Moldenhauer* (7th

Cir.), 193 Fed. (2d) 663. At page 665 of the opinion the court said:

" 'The question of materiality is a question of fact to be determined by the trier of facts. *Olson v. Herman Farmers Mutual Ins. Co.* 187 Wis. 15, 19, 203 N. W. 743. The test is not that the insurer was influenced, but that the fact, if truthfully stated, might reasonably have influenced the insurer in deciding whether it should reject or accept the risk. Compare *Kline v. Washington National Ins. Co.* 217 Wis. 21, 258 N. W. 370, and *Spray v. Order of United Commercial Travelers of America*, 221 Wis. 329, 267 N. W. 50. And the courts of Wisconsin have said that if a question material to the risk is answered falsely, the risk is necessarily increased. *Demirjian v. New York Life Ins. Co.* 205 Wis. 71, 74, 236 N. W. 566.'

"That is a correct analysis and summarization of the law." [1]

In most cases the question of the materiality of a false statement is a question of fact to be determined by the trier of the fact. However, in this instance, we have no hesitancy in concluding as a matter of law, under the undisputed facts, that the false statements were material and, in addition thereto, that they were made with an intent to deceive. William Wesley Jones knew he had attempted on several occasions to get a driver's license and that he was refused. Certainly if his driving capabilities were so deficient as to deny him a license it cannot be said that this deficiency was not material to the risk undertaken in the policy. Likewise there is no question that William Wesley Jones and his father intentionally attempted to deceive Badger by representing he was his deceased brother, Roy W. Jones, and representing he had a valid driver's license. Under these facts we hold, as a matter of law, that the statements were false and made with intent to deceive and that they were material to and did increase the risk.

[1] See also *Polar Mfg. Co. v. Integrity Mut. Ins. Co.*, *supra*, and *Stockinger v. Central National Ins. Co.*, *supra*.

As between Badger, the insurer, and William Wesley Jones, the insured, the policy is void pursuant to sec. 209.06 (1), Stats. The question remains whether Badger can assert the invalidity of the insurance contract against the injured third party, the plaintiff Bade.

Counsel for Bade asserts that the doctrines of waiver, estoppel and laches prevent Badger from asserting the invalidity of the policy.

" 'Waiver' is defined as voluntary and intentional relinquishment of a known right. As said in *Nolop v. Spettel* (1954), 267 Wis. 245, 249, 64 N. W. (2d) 859:

" 'A waiver is the intentional relinquishment of a known right.' *Swedish American Nat. Bank v. Koebernick,* 136 Wis. 473, 479, 117 N. W. 1020. 'Since an intention to relinquish an existing right or advantage is generally regarded as an essential of a waiver, it follows that it must be shown by the party claiming a waiver that the person against whom the waiver is asserted had at the time knowledge, actual or constructive, of the existence of his rights or of the facts upon which they depended. Ignorance of a material fact negatives a waiver. Waiver cannot be established by a consent given under a mistake of fact.' 56 Am. Jur., Waiver, p. 114, sec. 14. *Davies v. J. D. Wilson Co.* (1957), 1 Wis. (2d) 443, 466, 467, 85 N. W. (2d) 459." [2]

There is nothing in the pleadings, affidavits or other moving papers to show that the agents or officers of Badger knew of the false representations or that they knowingly or intentionally relinquished any right to assert the defense. The doctrine of waiver is not available to the plaintiff under these undisputed facts.

The plaintiff argues the doctrine of estoppel and laches together and they will be so treated in this opinion.

" '. . . An estoppel *in pais* consists of action or non-action on the part of the one against whom the estoppel is asserted which induces reliance thereon by another,

<hr/>

[2] *Hanz Trucking, Inc., v. Harris Brothers Co.* (1965), 29 Wis. (2d) 254, 264, 265, 138 N. W. (2d) 238.

either in the form of action or nonaction, to his detri-ment. *Dixon v. Davidson* (1930), 202 Wis. 19, 231 N. W. 276; *Callaway v. Evanson* (1956), 272 Wis. 251, 75 N. W. (2d) 456; *Eau Claire Dells Improvement Co. v. Eau Claire, supra.*' " [3]

The equitable doctrine of laches is a recognition that a party ought not to be heard when he has not asserted his right for unreasonable length of time or that he was lacking in diligence in discovering and asserting his right in such a manner so as to place the other party at a disadvantage.

It is the position of the plaintiff that Badger was not diligent and in fact made no effort to discover the fraud until three years had passed; that because of our direct-action statute [4] he could bring the action against Badger even though the principal defendant was not served; and that to allow the policy defense to be asserted after the expiration of the three-year statute of limitations for personal injuries places him in a completely disadvantageous position and that because of this delay, in the manner of laches, Badger should now be estopped from raising the policy defense.

Whether the plaintiff is foreclosed from bringing any action against William Wesley Jones is not before us and we do not opine upon it except to point out that actions based upon fraud are governed by a six and not a three-year statute of limitations. [5]

Did Badger fail to use reasonable diligence in discovering the fraud? There is nothing on the face of the application nor any other facts in the record before us that should have reasonably alerted Badger to the fraudulent representations. The policy was issued in October of 1960; the accident occurred in January of 1961—a pe-

[3] *Hanz Trucking, Inc., v. Harris Brothers Co., supra,* at pages 266, 267.

[4] Sec. 260.11, Stats.

[5] See sec. 330.19 (7), Stats.

riod of about four months. The plaintiff's cause of action against the driver of the vehicle arose at that time. He commenced his action at the eleventh hour so to speak, on December 16, 1964, some two years and ten and one-half months after the accident. The fraud was discovered in June of 1965 by the attorney representing Badger in the litigation, and the defense was asserted in a matter of weeks.

The interval between the issuance of the policy in October of 1960 and the accident in January of 1961 is without apparent irregularity, and does not show a lack of due diligence in investigating for an unknown fraud.

We have not been furnished with authority that requires an insurance carrier to investigate for fraud in the interval between the date of an accident and the date the claim was made by the commencement of an action. Likewise, the period between the commencement of the action and the discovery and assertion of the defense of fraud does not constitute an unreasonable delay or lack of due diligence under the undisputed facts in this record.

In support of his estoppel argument, counsel for the plaintiff cites and quotes *Kurz v. Collins* (1959), 6 Wis. (2d) 538, 549, 95 N. W. (2d) 365, to this effect:

"The interests of third parties who have been injured or damaged as a result of the negligent operation of the insured vehicle must also be considered. Certain statutes enacted by the legislature have clearly enunciated such a public policy. *Pavelski v. Roginski* (1957), 1 Wis. (2d) 345, 350, 84 N. W. (2d) 84."

The *Kurz Case* must be distinguished upon its facts. In *Kurz* the claim of the insurer was that the insured made false statements after the accident so as to breach the "co-operation clause" of the policy. In *Kurz* the false statement was made after a valid policy had issued and after the injury to a third party. In this instance the

fraud was committed before the policy was issued. The policy was, in effect, void from its inception.[6]

This distinction is not inconsistent with the rule of *Kurz*. An additional quotation from *Kurz* is:

"We deem that such public policy requires that, where the rights of an injured third party have intervened subsequent to the issuance of the contract of insurance, the insurer should not be freed from liability to such third party, on the ground of non-co-operation of the insured in having made a false statement, unless the insurer has been harmed thereby." (p. 549)

The plaintiff in his affidavit in opposition to the motion states, "the proper papers were filed by the insurance company with the Motor Vehicle Department indicating such coverage." The "proper papers" are not otherwise described or defined. We assume the reference is to the SR-21 form as provided by sec. 344.15, Stats.

Sub. (5) of sec. 344.15, Stats., specifically reserves to the insurance company the right to assert the defense of fraud:

"Nothing in this chapter shall be construed to impose any obligation not otherwise assumed by the insurance company or surety company in its automobile liability policy or bond except that if no correction is made in the report within 30 days after it is mailed to the insurance company or surety company, the company, except in case of fraud, whenever such fraud may occur, is estopped from using as a defense to its liability the insured's failure to give permission to the operator or a violation of the purposes of use specified in the automobile liability policy or bond or the use of the vehicle beyond agreed geographical limits."

---

[6] In *Thompson v. Dairyland Mut. Ins. Co.* (1966), 30 Wis. (2d) 187, 140 N. W. (2d) 200, we recognized that an insurer can raise the defense, as against a third person, that it had no contractual obligation because of the fact that the insured had not taken the proper steps to renew or transfer an existing policy.

We are of the opinion that upon the undisputed material facts that Badger was not guilty of laches in the discovery of the fraud and that it is not by its conduct estopped from asserting it as a defense to its liability.

The plaintiff also argues that Badger should be barred from asserting its policy defense because its agent committed a fraud. The fraud is alleged to have occurred because the agent Radonski signed the application form wherein one of the phrases reads as follows:

"I have known the applicant for *REF* years. I unqualifiedly recommend the applicant and other drivers listed as desirable risks."

The letters *REF* unquestionably mean that the applicant was referred to the agent. These letters do not establish that the agent attempted to represent to the company that he knew the applicant. If he intended to do so the agent would have placed a year in the blank space. The use of the letters *REF* imply the agent did not know the applicant and that he was not willing to personally recommend the applicant, thereby negating the effect of this and the following sentence. Therefore, it does not appear as if the agent intended to commit a fraud on Badger.

Badger has set forth undisputed facts constituting a valid defense to its policy and is entitled to summary judgment dismissing the complaint.

*By the Court.*—Order reversed with directions to enter summary judgment dismissing the complaint as to the defendant, Badger Mutual Insurance Company.

HALLOWS, J., took no part.